**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| BRYAN BULLER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CHRIS WOODROW, et al.,<br><br>　　　　　　Defendants. | Case No. 17-cv-06562-BLF<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING PLAINTIFF'S STATE LAW CLAIMS WITHOUT PREJUDICE**<br><br>[Re: ECF 45] |

Plaintiff, Mr. Bryan Buller, brought this suit against the City of Morgan Hill (the "City") and three City of Morgan Hill police officers (together with the City, "Defendants") alleging violations of 42 U.S.C. § 1983 and various California state laws arising from his arrest. This case turns on a unique set of facts because unfortunately, Mr. Buller, has passed away since the filing of the Complaint. ECF 51. Upon notification of Mr. Buller's passing, the Court stayed the case for 30 days to allow Buller's estate to make an appearance. ECF 52. Because Buller's estate has made no appearance, and no discovery was conducted by Buller before his passing, the Court issues this Order based on Defendants' unopposed motion for summary judgment. The Court has considered the Complaint, Defendants' briefing, the admissible evidence, and the applicable law. For the reasons that follow, Defendants' motion for summary judgment is GRANTED IN PART and Buller's remaining state law claims are DISMISSED without prejudice.

## I.　BACKGROUND

### A.　Plaintiff's Complaint

In the early morning of November 22, 2015, Bryan Buller was driving to his home in the City of Morgan Hill, California. Compl. ¶ 6. Buller claims that when he arrived at a stoplight, he

was unaware that a police vehicle was behind him. Compl. ¶ 6. When the police officers turned on their sirens behind him, Buller claims that it was unclear that they were directed toward him because this was near a fire station where there was frequent activity. Compl. ¶ 8. Buller claims that despite there being no indication that he was fleeing, that the officers "executed a risky maneuver and attempted to ram plaintiff's vehicle by driving in front of him." Compl. ¶ 9. Buller says he became frightened as a result. Compl. ¶ 9. Because Buller was close to his house, he proceeded to drive home slowly and pulled into his driveway. Compl. ¶¶ 9-10. Buller claims that as soon as he got out of the car, Officers Chris Woodrow and Charles Rudisel, without provocation, began striking and beating him with their hands. Compl. ¶ 11. Buller claims that he tried to comply as best he could with inconsistent demands from the officers. Compl. ¶ 12. Regardless, Buller claims the officers, now including Defendant Sergio Pires, sprayed him with pepper spray and continued beating him. Compl. ¶ 13. Further, Buller claims that officers who arrived at the scene later, including Officer Pires, interviewed witnesses, "contradicted and argued with the witnesses and attempted to have them change their stories." Compl. ¶ 16. When the paramedics arrived, Buller claims that Officer Woodrow "told paramedics to stop and attempted to have plaintiff breathe into a breathalyzer device," which Buller rejected. Compl. ¶ 17. Buller was then taken to Saint Louise Hospital, where Buller claims it was found that he had fractured ribs, a torn right rotator cuff, a dislocated left shoulder, bulging disks, and numbness in his hands. Compl. ¶ 18.

### B.    Officer's Declarations

At approximately 1:15 a.m. on November 22, 2015, Officers Woodrow and Rudisel were driving northbound on Monterey Road in Morgan Hill in a marked Morgan Hill Police Department Vehicle. Declaration of Chris Woodrow ("Woodrow Decl.") ¶ 2, ECF 45-2; Declaration of Charles Rudisel ("Rudisel Decl.") ¶ 2, ECF 45-3. Officers Woodrow and Rudisel noticed a white truck in front of them speeding and weaving in and out of its lane. Woodrow Decl. ¶ 2; Rudisel Decl. ¶ 2. The white truck, with the officers' vehicle now behind it, approached a traffic light at the intersection of Old Monterey Road and Monterey Road. Woodrow Decl. ¶ 3; Rudisel Decl. ¶ 2. Once the light turned green the officers activated the

2

patrol vehicle's emergency equipment, specifically, red lights and sirens. Woodrow Decl. ¶ 3; Rudisel Decl. ¶ 2. The driver of the white truck, later identified as Bryan Buller, did not apply his brakes, did not attempt to pull over, and did not activate his turn signal to indicate that he intended to comply with the stop command from Officers Woodrow and Rudisel. Woodrow Decl. ¶ 4; Rudisel Decl. ¶ 3. The vehicle proceeded to turn left and abruptly stopped at the stop sign on Old Monterey Road and Llagas Road near the El Toro Fire Station. Woodrow Decl. ¶¶ 4-5; Rudisel Decl. ¶¶ 3-4. The vehicle continued westbound on Llagas Road and made a left turn heading southbound onto Bender Circle. Woodrow Decl. ¶¶ 4-5; Rudisel Decl. ¶¶ 3-4. At this point, Officer Woodrow, who was driving, used the northbound lane on Bender Circle travelling south in an attempt to cut off the white truck. Woodrow Decl. ¶ 6; Rudisel Decl. ¶ 4. Noticing that the truck had no intention of stopping, however, Officer Woodrow slammed on his brakes to prevent a collision. Woodrow Decl. ¶ 6; Rudisel Decl. ¶ 4. Officers then saw the garage door at 169 Bender Circle open and the white truck pull into the driveway. Woodrow Decl. ¶ 7; Rudisel Decl. ¶ 5. Officers state that they believed Buller was attempting to flee. Woodrow Decl. ¶ 7; Rudisel Decl. ¶ 5.

Officer Woodrow states that once he approached the vehicle, he saw what looked like a black baton, which turned out to be a metal flashlight, on the floor of the driver's side of Buller's truck. Woodrow Decl. ¶ 7. Officer Woodrow states that once Buller exited his vehicle, Woodrow continuously ordered him to the ground, yet Buller refused to comply. Woodrow Decl. ¶ 7. Both Officers noticed that Buller was 6'2'' and approximately 270 lbs. Woodrow Decl. ¶ 8; Rudisel Decl. ¶ 6. Officer Woodrow states that Buller turned to him with his right arm up. Woodrow Decl. ¶ 8. Officer Woodrow perceived this as a threat and struck Buller's right arm with his baton, which was ineffective. Woodrow Decl. ¶ 8. At this point, Officer Woodrow states that he could smell a strong odor of an alcoholic beverage from Buller's person. Woodrow Decl. ¶ 8. Officers Woodrow and Rudisel, recognizing the threat, grabbed Buller and pulled him to the ground. Woodrow Decl. ¶ 9; Rudisel Decl. ¶ 6.

Officer Woodrow states that Buller struck him on the forehead with his right elbow and grabbed Woodrow's radio microphone and ripped it from his uniform. Woodrow Decl. ¶ 9.

3

Buller continued to try to stand up despite officers' ordering Buller to stay on the ground and place his hands behind his back. Woodrow Decl. ¶ 9; Rudisel Decl. ¶ 7. Officer Woodrow warned Buller that if Buller did not comply, that he would use his taser. Woodrow Decl. ¶ 10; Rudisel ¶ 8. Officer Woodrow states that Buller continued to resist, so he removed the cartridge from his department-issued taser and performed a dry stun on Buller's right shoulder. Woodrow Decl. ¶ 10. At this point, Officer Woodrow called for additional units. Woodrow Decl. ¶ 10. Both Officers state that the first drive stun was ineffective, so Officer Rudisel attempted a second drive stun with his taser, which also proved ineffective. Woodrow Decl. ¶ 10; Rudisel Decl. ¶ 9. Officer Rudisel states that Buller continued to try and get up, so he grabbed Officer Woodrow's baton and hit Buller three times on the back of his left thigh. Rudisel Decl. ¶ 9. At this time, several witnesses emerged from Buller's residence. Woodrow Decl. ¶ 11. Officer Woodrow states he was concerned that because additional officers had not yet arrived, that "others could potentially join the fray." Woodrow Decl. ¶ 11. Because Buller was still trying to get up Officer Woodrow deployed his department-issued pepper spray on the right side of Buller's face for 2-3 seconds. Woodrow Decl. ¶ 11; Rudisel Decl. ¶ 10. Officers both state that this too was ineffective. Woodrow Decl. ¶ 11; Rudisel Decl. ¶ 10.

Eventually, Officer Rudisel was able to apply his handcuffs to Buller's left wrist. Rudisel Decl. ¶ 11. According to Officer Woodrow, Buller still attempted to get up, so he grabbed Buller's collar and forced Buller's head to the ground. Woodrow Decl. ¶ 13-14. By this time, additional units arrived, including Officer Pires, and the officers were able to complete the arrest. Woodrow Decl. ¶ 14; Rudisel Decl. ¶ 13-14. Buller refused a breath or blood alcohol test on the scene. Woodrow Decl. ¶ 14. A blood test later taken at the hospital showed that Buller had a 0.251% blood alcohol content level. Woodrow Decl. ¶ 16; Rudisel Decl. ¶ 12.

### C. Buller's Claims Against the City of Morgan Hill and the Officers

Buller filed his Complaint against the City of Morgan Hill and three City of Morgan Hill police officers, Officer Chris Woodrow, Officer Charles Rudisel and Officer Sergio Pires (the "Officers"), alleging Fourth and Fourteenth Amendment violations including unreasonable search and seizure and use of excessive force under 42 U.S.C. Section 1983. Compl. ¶ 25. Buller also

seeks to hold the City liable for these Section 1983 violations and ongoing constitutional violations due to its customs and policies. Compl. ¶ 29. Further, Buller brings a host of derivative state law claims against the Officers (and against the City pursuant to respondeat superior) including assault and battery, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, and violation of California Civil Code Section 52.1 (the "Bane Act"). Compl. ¶¶ 30-52.

## II.      LEGAL STANDARD

### A.      Summary Judgment

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the

nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. However, "the 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B.    Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss,* 134 S.Ct. 2056, 2066–67 (2014) (quoting *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 (2011)). "[T]he Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)). Under the applicable pleading standard, a plaintiff must allege facts sufficient to make out a plausible claim that it would have been clear to the defendant officer that his conduct was unlawful in the situation he confronted. *Id.* at 2067. "Because qualified immunity is an affirmative defense from suit, not merely from liability, '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Doe By and Through Doe v. Petaluma City School Dist.,* 54 F.3d 1447, 1449–50 (9th Cir. 1995) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

In *Saucier v. Katz*, the Supreme Court set forth a two-part approach for analyzing qualified immunity. 533 U.S. 194, 121 (2001). The analysis contains both a constitutional inquiry and an immunity inquiry. *Johnson v. County of Los Angeles,* 340 F.3d 787, 791 (9th Cir. 2003). The constitutional inquiry requires the court to determine this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201. If the Court determines that a constitutional violation could be made out based on the parties' submissions, the second step is to

determine whether the right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The Supreme Court has clarified that the *sequence* of analysis set forth in *Saucier* is not mandatory and that a court may exercise its sound discretion in determining which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan,* 555 U.S. 223, 241-42 (2009). Thus, in some cases, it may be unnecessary to reach the ultimate constitutional question when officers would be entitled to qualified immunity in any event, a result consistent with longstanding principles of judicial restraint.

The Supreme Court recently reiterated the longstanding principle that a "clearly established" constitutional right "should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Rather, it must be "particularized" to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Defining the right at too high a level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Ricard*, 134 S.Ct. 2012, 2023 (2014). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id.*

## III. DISCUSSION

Defendants move for summary judgment on all of Buller's claims. *See generally* Motion for Summary Judgment ("Mot."), ECF 45-1. As discussed above, the unique circumstances under

which this motion arises have left the motion unopposed. Therefore, this Court addresses the arguments raised in Defendants' motion in turn.

### A. Constitutional Violations Against the Officers

In count one of his Complaint, Buller asserts a claim alleging that Officers deprived him of the right to be free from unreasonable search and seizures and the right to be free from the use of excessive force protected by the Fourth and Fourteenth Amendments. "[I]f a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 843 (1998). Claims for unreasonable seizures and excessive force fall within the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 9 (1968); *Graham v. Connor,* 490 U.S. 386, 395 (1989). Because Buller's claims for violation of the Fourth and Fourteenth Amendments arise from the same series of events and appear to be limited to allegations of excessive force and unlawful search and seizure, the Court limits its analysis to the Fourth Amendment.

Buller's Fourth Amendment excessive force and unlawful search and seizure claims are discussed below. Due to the unfortunate circumstances of this case, the only admissible evidence available to the Court at summary judgment is the sworn declarations of Officers Woodrow and Rudisel. In its analysis, the Court relies on those declarations, viewed in the light most favorable to Buller.

### 1. Excessive force

Buller contends that the Officers are responsible for using excessive force against him in violation of the Fourth Amendment. Compl. ¶ 25. As explained above, a government official sued under Section 1983 is entitled to qualified immunity unless the plaintiff shows that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Plumhoff*, 134 S.Ct. at 2023 (citing *al-Kidd*, 131 S.Ct. at 2080). Because Buller must succeed on both prongs the Court addresses each in turn. *See Nelson v. City of Davis*, 685 F.3d 463, 477-78 (9th Cir. 2007).

### a. Constitutional violation

Turning to the first prong of qualified immunity at summary judgment, Defendants must show that no rational trier of fact could find that the Officers' use of force violated Buller's Fourth Amendment rights. If the evidence, viewed in the light most favorable to Buller, could support a finding of excessive force, then Defendants are not entitled to summary judgment on the excessive force claim. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc).

The Fourth Amendment "guarantees citizens the right to be secure in their persons . . . against unreasonable . . . seizures of the person." *Graham v. Connor,* 490 U.S. 386, 394 (1989) (internal quotation marks omitted) (alteration in original). "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395; *see also City of Hemet*, 394 F.3d at 700–01.

The "reasonableness" of a seizure depends on how it was carried out. *Graham*, 490 U.S. at 395. The "objective reasonableness" of an officer's use of force in a particular case is determined "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id.* at 396–97. "Because this inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotations omitted); *see also Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) ("summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly").

Moreover, the Supreme Court has explained that evaluating an excessive force claim "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "The 'reasonableness' of a

particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (internal quotation marks and citation omitted).

The Ninth Circuit has articulated a three-step approach to *Graham* balancing. *See Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011). First, the Court "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Id.* (internal quotation marks and citation omitted). Second, the Court must "evaluate the government's interest in the use of force." *Id.* Finally, the Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Id.* (internal quotation marks and citation omitted); *see also Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) ("This standard requires us to balance the amount of force applied against the need for that force.").

Despite the *Graham* factors and the approach laid out in *Glenn*, the Court must keep in mind that "there are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh their way through the factbound morass of 'reasonableness.'" *See Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007)). The Court embarks on that endeavor as follows.

### i. Nature and quality of the intrusion

First, as to the severity of the intrusion on Buller's Fourth Amendment rights, the record indicates that the force employed by Officers Woodrow and Rudisel was at least an intermediate use of force because it was capable of inflicting significant pain and causing serious injury. *See Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011) (holding that pepper spray and baton blows constitute intermediate force that, "while less severe than deadly force, nonetheless present a significant intrusion upon an individual's liberty interests.")

Defendants cite *Huber v. Coulter*, to support their proposition that "[c]ases involving takedowns in which courts have denied qualified immunity have generally involved greater levels of force and significantly greater injuries." Mot. at 8 (citing *Huber v. Coulter*, 2015 WL 13173223 at *14 (C.D. Cal 2015)). The evidence indicates that Officers Woodrow and Rudisel

initially tackled Buller to the ground. Woodrow Decl. ¶ 9; Rudisel Decl. ¶ 6; *see also* Compl. ¶ 11. When Buller resisted arrest, the officers used baton strikes, tasers and pepper spray to subdue Buller. Woodrow Decl. ¶¶ 8-11; Rudisel Decl. ¶¶ 8-10; *see also* Compl. ¶¶ 11, 13. When these attempts failed, Officers Woodrow further forced Buller head to the ground. Woodrow Decl. ¶ 13.

The Ninth Circuit has recognized that "[t]he police arsenal includes many different types of force, which intrude upon the Fourth Amendment rights of the individual to varying degrees." *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012). Moreover, "physical blows or cuts often constitute a more substantial application of force than categories of force that do not involve a physical impact to the body." *Id.* (internal quotations and citation omitted).

Here, while it is undisputed that Officers used physical force on Buller, "[n]ot every push or shove, even if it may seem unnecessary in the peace of the judge's chambers, . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotations and citation omitted). The Court, therefore, must consider the amount of physical force used against Buller in light of the governmental interests at stake.

### ii. Governmental interest in use of force

Under *Graham v. Connor*, the Court evaluates the government's interest in the use of force by examining three core factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. 490 U.S. at 396; *see also Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). These factors are not exclusive and are "simply a means by which to determine objectively 'the amount of force that is necessary in a particular situation.'" *Deorle*, 272 F.3d at 1280 (quoting *Graham*, 490 U.S. at 396-97). In other words, the Court examines the totality of the circumstances and considers "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Franklin v. Foxworth,* 31 F.3d 873, 876 (9th Cir. 1994). For example, in some cases the Court may find it necessary to consider the availability of alternative methods of capturing or subduing a suspect. *See City of Hemet*, 394 F.3d at 701.

Here, the totality of circumstances supports a strong governmental interest in the use of

force during Buller's arrest.  It is true that the Buller was suspected of driving under the influence, which "while certainly not to be taken lightly, was a misdemeanor" and not a violent crime.  *See Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991).  That said, the "most important" factor in considering the governmental interest in the use of force under *Graham* is whether the suspect posed an "immediate threat to the safety of the officers or others."  *City of Hemet*, 394 F.3d at 702 (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)); *see also Deorle*, 272 F.3d at 1281. ("A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern.").

Buller was speeding and weaving in and out of his traffic lane.  Woodrow Decl. ¶ 2; Rudisel Decl. ¶ 2. When Officers Woodrow and Rudisel, in a patrol car with red lights and sirens activated, attempted to cut off Buller's truck, Buller increased his speed and drove directly toward the officers' vehicle."  Woodrow Decl. ¶¶ 3, 6; Rudisel Decl. ¶¶ 2, 4.  Further, Buller ignored multiple orders to get on the ground and produce his hands.  Woodrow Decl. ¶¶ 8, 9; Rudisel Decl. ¶¶ 6, 7.  Throughout the encounter Buller "continually tried to stand up."  Woodrow Decl. ¶ 9; Rudisel Decl. ¶ 8.  Further, Buller struck Officer Woodrow on the forehead with his elbow, "causing pain to the rights side of [Woodrow's] forehead" and ripped the radio microphone from Woodrow's uniform.  Woodrow Decl. ¶ 9.  In these circumstances, Defendants argue, the Officers were "justified in using elevated levels of force (baton strikes, taser applications, etc.) in order to gain [Buller's] compliance."  Mot. at 8.  The Court agrees.  Defendants' uncontested evidence is sufficient to indicate that Buller posed an immediate threat to the safety of the Officers at the time of his arrest.

The third and final consideration under *Graham's* governmental interest factor is whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  490 U.S. at 396.  Both officers state that Buller was attempting to flee when he initially exited his vehicle. Woodrow Decl. ¶ 7; Rudisel Decl. ¶ 5.  Buller ignored multiple orders to get on the ground and produce his hands.  Woodrow Decl. ¶¶ 8, 9; Rudisel Decl. ¶¶ 6, 7.  Several times during their encounter, Officers Woodrow and Rudisel state that Buller "continually tried to stand up." Woodrow Decl. ¶ 9, 10, 13; Rudisel Decl. ¶ 7, 9.  These uncontested facts present show that Buller

was actively resisting arrest.

In sum, the Court concludes that the Officers had a strong governmental interest in the use of force to apprehend Buller.

### iii.     Balancing competing interests

In this unique instance where Plaintiff has presented no evidence, the Court concludes that the governmental interests in the use of force against Buller justify the force used against him. Ultimately, the factors above, based on Defendants' evidence, weigh in favor of finding that the Officers' use of force was reasonable.  Therefore, Defendants did not violate Buller's Fourth Amendment right against excessive use of force.

### b.     Clearly established

Because there is no triable question of fact regarding the constitutional violation on the excessive force claim, the Court need not determine whether the constitutional violation was clearly established at the time of the arrest.

***

In sum, the Officers are entitled to qualified immunity and their motion for summary judgment on the excessive force claim is GRANTED.

### 2.     Unlawful Search and Seizure Against the Officers

In his Complaint, Buller further alleges that Officers are responsible for an unlawful search and seizure in violation of the Fourth Amendment.  Compl. ¶ 25.  As explained above, a governmental official sued under Section 1983 is entitled to qualified immunity unless the plaintiff shows that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct.  *Plumhoff*, 134 S.Ct. at 2023 (citing *al-Kidd*, 131 S.Ct. at 2080).  Because Buller must succeed on both prongs the Court addresses each in turn. *See Nelson v. City of Davis*, 685 F.3d 463, 477-78 (9th Cir. 2007).

### a.     Constitutional Violation

Under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, (*Mapp v. Ohio*, 367 U.S. 643 (1961)), the people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall

issue, but upon probable cause." *Maryland v. Pringle*, 540 U.S. 366, 369 (2003) (citing U.S. Const. amend. IV). "A warrantless arrest of an individual in a public place for a felony or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Pringle*, 540 U.S. at 369 (citing *United States v. Watson*, 423 U.S. 411, 424 (1976)). "Probable cause to arrest depends on whether, 'at the moment the arrest was made . . . the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Adams v. Williams*, 407 U.S. 143, 148 (1972) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

As to first prong of qualified immunity at summary judgment, Defendants argue, and the Court agrees, that the Officers did not violate Buller's Fourth Amendment right against unlawful search and seizure because they had probable cause to arrest Buller. *See* Mot. at 6. Defendants argue that Officers Woodrow and Rudisel believed Buller violated California Penal Code Section 148(a)(1). *See* Mot. at 6-7; Woodrow Decl. ¶ 14. Section 148(a)(1) provides that every person who willfully resists any peace officer in the discharge of any duty of his or her office or employment shall be punished by fine or by imprisonment or by both that fine and imprisonment. Cal. Pen. Code § 148(a)(1). The evidence shows that Buller was speeding and weaving in and out of its traffic lane and refused to stop for police. Woodrow Decl. ¶¶ 2, 5; Rudisel Decl. ¶¶ 2, 3. Specifically, Officer Woodrow activated his patrol vehicle's red lights and siren and initiated a "a vehicle code enforcement stop" – but Buller did not pull over. Woodrow Decl. ¶ 4. When Officers Woodrow and Rudisel attempted to cut off Buller's truck, Buller increased his speed and drove directly toward the officers' vehicle. Woodrow Decl. ¶ 6; Rudisel Decl. ¶ 4. Once Buller got to his residence, he continued to resist orders to get on the ground, and produce his hands for arrest. Woodrow Decl. ¶ 9; Rudisel Decl. ¶ 7. Defendants' uncontested evidence is sufficient to establish that Officers' believed that Buller was violating Section 148(a)(1). Therefore, the Officers had probable cause. Accordingly, the Officers did not violate Buller's Fourth Amendment right against unlawful search and seizure.

### b.      Clearly established

Because there is no triable question of fact regarding the constitutional violation on the unlawful search and seizure claim, the Court need not determine whether the constitutional violation was clearly established at the time of the arrest.

***

In sum, the Officers are entitled to qualified immunity and their motion for summary judgment on the unlawful search and seizure claim is GRANTED.

### B.      Constitutional Violations Against the City

Defendants also seek summary judgment on Buller's Section 1983 claim against the City. Mot. at 8.  Buller seeks to hold the City liable for its policy or practice of "ongoing constitutional violations and practices by defendant officers herein and other Morgan Hill police officers and MSOs, consisting of the use of unnecessary and excessive force, false arrests, failure of officers to follow procedures, inadequate internal investigations of police abuse, false reports, destruction of evidence to cover up misconduct, and unequal law enforcement."  Compl. ¶ 28.  Defendants respond that "Plaintiff has no evidence that the City of Morgan Hill has engaged in a policy, practice, or custom of violating civil rights."  Mot. at 9.

In order to hold the City liable under Section 1983, Buller must show "(1) that he possessed a constitutional right of which he was deprived; (2) that the [City] had a policy; (3) that the policy 'amount to deliberate indifference' to [Buller's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation'" *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). Moreover, the Ninth Circuit has held that "[i]f no constitutional violation occurred, the municipality cannot be held liable."  *Long v. City and Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).

The Court agrees with Defendants that Buller has provided no evidence that his injuries were inflicted pursuant to an official county policy or custom.  Further, as discussed above, there are no constitutional violations.  Therefore, the City cannot be held liable.  Thus, Defendants' motion for summary judgment as to the Section 1983 claim against the City is GRANTED.

### C. State Law Claims

All of Buller's remaining claims are predicated on California state law. A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which is has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford*, 625 F.3d at 561. In this unique case, the factors weigh in favor of declining supplemental jurisdiction because Buller has passed away and his estate has not made an appearance. Having now granted summary judgment on all the federal claims alleged against Defendants, the Court declines to assert supplemental jurisdiction over Buller's remaining state law claims. *See City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims); *see, e.g.*, *Indiveri v. Mack*, No. 17-00595 BLF (PR), 2019 WL 1084175, at *11 (N.D. Cal. Mar. 5, 2019) (declining to exercise jurisdiction over the remaining state law claim *sua sponte*). Accordingly, Buller's state law claims are DISMISSED without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, at ECF 45, is GRANTED as to the Section 1983 claims against the Officers and the City. Additionally, the Court declines to exercise supplemental jurisdiction over Buller's five state law claims. Accordingly, Buller's state law claims are DISMISSED without prejudice.

**IT IS SO ORDERED.**

Dated: March 2, 2020

_____
BETH LABSON FREEMAN
United States District Judge